THEODORE MIEHL, PLAINTIFF-RESPONDENT, v. JERRY DARPINO, DEFENDANT, AND THE CITY OF HAMMON-TON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued September 10, 1968—Decided November 25, 1968.

*Mr. James L. Cooper* argued the cause for respondent (*Messrs. Arkus & Cooper,* attorneys).

*Mr. Harry Miller* argued the cause for appellant, The City of Hammonton (*Messrs. Miller, Brone, Valore & Mc-Allister,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. The Appellate Division affirmed a judgment against the city of Hammonton for injuries sustained in an accident allegedly caused by the presence of a pile of snow created in connection with snow removal by said city. 99 *N. J. Super.* 1 (1968). This Court granted defendant's petition for certification. 51 *N. J.* 397 (1968).

The facts developed at the trial are as follows: On or about January 13, 1964, there had been a heavy snowfall in the city of Hammonton. The snow on Bellevue Avenue, a state highway, was plowed to the curb by the State Highway Department while that on Second Street was similarly plowed by a contractor of the city. The snow thus pushed to the side of both streets was removed by the city by depositing it in trucks with a front-end loader. On the day in question, there remained a pile of snow two to three feet in height at the apex, located partially on the sidewalk and partially in the street at the intersection of Bellevue Avenue and Second Street. This condition allegedly resulted from the plowing activity of the city. Plaintiff, a mailman, was

walking to work when he was injured on or about 7:00 A.M. on January 23, 1964, at that intersection. The accident from which the injuries arose, occurred when plaintiff attempted to cross Bellevue Avenue at Second Street. He testified that in order to cross he had to pass through a narrow passage in this snow pile, evidently created by the passage of earlier pedestrians. After having traversed this path, he took several steps to his left and stopped, waiting for a lull in the traffic. While standing in the street, preparatory to crossing Bellevue Avenue, he saw a car on his right, making a left turn, veer toward him. He attempted to avoid the oncoming vehicle but could not step back through or find an opening in the pile of snow. He stated that:

> "I was trapped because of the fact that I couldn't climb the snow and the treacherous condition of this ice which had melted and accumulated during the night, the accident was over. Evidently, it had interfered with my getting away from the front of this car; and if it wasn't for the hazardous condition there at that intersection, I would have made it."

The car struck and injured him. Plaintiff settled with defendant, Jerry Darpino, who was thereupon dismissed from the suit. The action proceeded to trial against the City of Hammonton. The jury returned a verdict in the amount of $35,000 against which an appropriate credit was given for the settlement by the joint tortfeasor, Jerry Darpino.

Plaintiff argues that (1) even though performing a governmental function, the municipality is liable as it created a hazardous condition by its affirmative act; in any event (2) a municipality should be held liable for injuries resulting from conditions caused by snow removal in the same manner and to the same extent as individuals; (3) municipal immunity from liability in tort should be terminated in all cases of ministerial acts, i. e., acts which do not involve governmental planning or decision making.

Plaintiff, relying upon the increasing dissatisfaction with the municipal governmental-proprietary test to measure

liability, *Hoy v. Capelli*, 48 *N. J.* 81 (1966) ; *Visidor Corp. v. Borough of Cliffside Park*, 48 *N. J.* 214 (1966) ; *Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury*, 51 *N. J.* 230 (1968), argues that there is no logical reason for a municipality not to be liable for injuries resulting from snow removal, to the same extent and upon the same basis as an individual. Plaintiff cites *Gentile v. National Newark and Essex Bkg. Co.*, 53 *N. J. Super.* 35 (*App. Div.* 1958) and *Foley v. Ulrich*, 50 *N. J.* 426 (1967) adopting the Appellate Division's dissenting opinion in 94 *N. J. Super.* 410 (*App. Div.* 1967), as authority for the rule of conduct which he proposes to impose upon a municipality. Under the rule as so suggested, a municipality would be liable when the hazard arising from a natural accumulation of snow is increased through the introduction of a new element of danger in the street snow removal.

There can be no doubt that the law of municipal tort liability is going through a metamorphosis. As stated in *B. W. King, Inc. v. Town of West New York*, 49 *N. J.* 318 (1967), at *pp.* 324–325 :

"* * * Municipal immunity from tort liability and the proprietary-governmental test have fallen into considerable disrepute. There is a consensus that most of the reasons for immunity have expired and that municipal liability should be subject to less restrictive limits. * * *

The difficulty with the articulation of a substitutionary rule lies in the ascertainment and expression of a perimeter for liability. It is most difficult if not impossible to academically visualize all the possible sets of circumstances which could give rise to a claimed municipal liability. There results an inability to state in advance a positive standard for that purpose. We have, however, recognized that certain municipal activities, regardless of how defined and tested, should continue to be immune from tort liability. * * * The problem should be approached by the court on a gradual case by case basis, permitting a new theory to metamorphize slowly. A firm rule can evolve with additional experience. The analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply."

In *Jackson v. Hankinson and Bd. of Ed. of New Shrews-bury, supra,* 51 *N. J.,* at *p.* 235 we said:

"* * * And although there has thus far been no express and complete disavowal of active wrongdoing terminology, there has been a shift towards frank recognition that municipal entities, along with all others, should justly be held accountable for injuries resulting from their tortious acts and omissions under ordinary principles of negligence, except, as a matter of policy, in situations involving so-called discretionary determinations and the like, recently dealt with in *Amelchenko v. Freehold Borough,* 42 *N. J.* 541, *pp.* 549–550 (1964) ; *Hoy v. Capelli,* 48 *N. J.* 81, 87–91 (1966) and *Visidor Corp. v. Borough of Cliffside Park,* 48 *N. J.* 214, *pp.* 220–221 (1966), *cert. denied* 386 *U. S.* 972, 87 *S. Ct.* 1166, 18 *L. Ed.* 2d 132 (1967). See *B. W. King, Inc. v. Town of West New York,* 49 *N. J.* 318, *pp.* 324–325 (1967) ; *Coleman v. Edison Tp.,* 95 *N. J. Super.* 600, 605 (*App. Div.* 1967)."

We must, therefore determine whether the present situation is one in which, as a matter of policy, the municipality should not enjoy immunity, but rather should be subject to the above suggested liability.

Snow is a common enemy interfering with normal pedestrian and vehicular traffic and on occasion results in a complete paralysis thereof. Drastically curtailing commerce and industry, it also endangers the general public safety as well, since police, fire, ambulance and medical services are unable to function efficiently throughout the entire community. The need for snow removal becomes imperative, and the municipality although not duty bound to so act, is under great pressure to exercise its governmental function and alleviate the condition. The cost of snow removal even to a limited extent is great.

Frequently, the area contiguous to plowed streets, including private driveways and sidewalks, is encumbered by additional snow through street plowing. To accede to plaintiff's thesis would be to require a municipality to completely remove all snow and ice — to in effect "broom sweep" all the traveled portion of the streets, driveways and sidewalks where natural snowfall has been disturbed by any removal of street snow. Only in this manner could a municipality be certain

that no accident could occur from the creation of a "new element of danger." Such a requirement would impose upon the municipalities of this state a duty not only impractical but also well-nigh impossible of fulfillment. The high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program. Patently, some cleaning of snow is better than none. The public is greatly benefited even by snow removal which does not attain the acme of perfection of "broom swept" streets. Relief from fallen snow which does not eliminate all danger of accident is better than none.

The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time. To require the individual members of the public to assume the relatively mild additional danger presented by accumulated piles of snow resulting from street snow removal is a minor sacrifice to exact when the alternative could be municipal failure to eliminate the far greater danger caused by permitting snow to remain as deposited by natural forces. The public benefit arising from snow removal far outweighs any slight, private detriment which could accompany such a municipal act.

This Court concluded in *Hoy v. Capelli, supra,* 48 *N. J.,* at *p.* 87 that "there are certain kinds of acts or omissions of government, no matter how they are categorized, defined or labelled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability." As in that case, we hold that the situation before us involves such an act.

Reversed and remanded for entry of judgment for defendant, The City of Hammonton.

*For reversal* — Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 6.

*For affirmance* — None.